Scott, J.
There is no doubt that a full, fair, and impartial report, of a judicial trial, had in open court, where the parties interested have an opportunity of asserting and vindicating their rights, may be published with impunity. Such reports, unaccompanied by malicious and defamatory comments, have always been held privileg jd. But the assignments of error, in this case, present the question whether such privilege extends to the publication of mere-preliminary proceedings, such as an ex parte affidavit, made before a proper officer, with a view to the arrest of the party, thereby falsely charged with crime.
■ In England, an unbroken current of authority, answers this question clearly in the negative. A brief reference may properly be made to a few of the cases.
Rex v. Lee, 5 Esp. 123, was a case (tried in 1804) of an information against a printer for a libel, in which counsel for the defense urged “that the publisher of a newspaper had a right to publish a fair account of all public transactions which occurred, and which were matters of public notoriety, provided they were given fairly and impartially; that the paragraphs in question were an account of a matter of public notoriety, and that which ho had published was a true report, founded on the depositions as they had been taken before a justice of the peace; that the paragraphs in question, being therefore a true narrative of ^public matter, they could not be deemed to be libelous.” Having called the clerk of the justices before whom the depositions had been taken to prove this part of *449 the case, Justice Heath interfered, saying: “That such evidence was inadmissible; that, putting the criminality of such proceeding out of the question, the evidence offered was ex parte; it was the deposition made by .the prosecutor only. But he was of opinion that the mere publication of ex parte evidence, before a trial, was of itself highly criminal.”
The same principle was affirmed in 1811, in the similar case of Rex v. Fisher, 2 Camp. 563, where it was said by Lord Ellen-borough: “ Trials at law, fairly reported, although they may occasionally' prove injurious to individuals, have been held to be privileged. Let them continue so privileged. The benefit they produce is groat and permanent, and the evil that arises from them is rare and incidental. But those preliminary examinations have no such privilege. Their only tendency is to prejudge those whom the law still presumes to be innocent, and to poison the sources of justice.”
This was a case of information against the publisher of a newspaper, for the pxiblication of a preliminary, ex parte, deposition of a prosecutrix, in support of a criminal charge.
Again, in 1824, in the case of Duncan v. Thwaites, 10 E. C. L. 180, it was said by C. J. Abbott: “ This court has, on more than one-occasion within a few years, been called upon to express its opinion-judicially on the publication of preliminary and ex parte proceedings, and has on every occasion delivered its judgment against the legality of such publications.”
And in 1837, in the case of Delegal v. Highley, 32 E. C. L. 402, which was an action of libel for the publication, in a newspaper, of a police report of proceedings, before' the Lord Mayor, against the plaintiff, upon a charge of having fraudulently obtained the signature of a *y0uth under twenty years of age to two blank stamped bills, it was said by Tindal, C. J.: “ There can be no doubt but that the publication of the fact that such an accusation was made, is calculated to injure him” (the plaintiff) “in his good name and reputation; and that the defendant is therefore called upon to justify such publication; and the only justifications which the law admits to the publication of an accusation of this nature are two: first, that the accusation against the plaintiff was founded on facts, which makes the charge itself a true charge; and secondly,, that the publication was justified by the occasion, viz., that it is a true, full, and faithful account of proceedings in a court of justice'. The plea in question sets up neither of these grounds of defense. It *450 3s merely an assertion that an accusation was made by some third person reflecting on the character of the plaintiff.” . . . “And
.■still further it appears, on this very record, that the libel justified ;is in fact a part of a legal proceeding only, viz., the charge, which the defendant is not justified in publishing alone.”
These cases may suffice to show the strict limitation which, through regard to the protection of private character, is imposed by the English courts on the privilege of publishing judicial proceedings. And the same limitation is recognized by the elementary writers. 1 Starkie on Slander, 265; Holt’s Law of Libel, 172, 173.
In this country, there seems to have been but few adjudications bearing directly upon the question, and we are aware of none which contravenes the doctrine of the cases cited. On the contrary, it was held by the Superior Court of New York city, in Stanley v. Webb, 4 Sandf. 21, that the publication of ex parte preliminary.proceedings before a police magistrate is not privileged; and that the publisher must find his justification in such a case not in privilege, but in the truth of the facts charged. The question was again considered, by the same court, in the subsequent case of Matthews v. Beach, 5 Sandf. 256, and *the decision in Stanleys. Webb was reaffirmed, and declared to rest as well on irresistible authority .as cogent reasons of public policy.
In a government like ours, characterized by free institutions, we .are by no means disposed to underestimate the importance of a free press. It is, doubtless, one of the strongest bulwarks of lib■erty, and the people of this country have ever guarded it with jealous care. By the first article of the amendments to the federal ■constitution, Congress is prohibited from making any law abridging the freedom of speech or of the press. And the framers of our •state constitution have thought proper to provide, expressly, in that instrument, that “no law shall be passed to restrain or .abridge the liberty of speech or of the press.” But the same instrument which guarantees to every citizen the right freely to “ speak, write and publish his sentiments on all subjects,” declares that he shall also be “responsible for the abuse of the right,” .and that “ every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law.”
The liberty of the press, properly understood, is not, therefore, inconsistent with the protection due to private, character. It has 'been well defined as consisting in “ the right to publish, with im *451 punity, the truth, with good motives, and for justifiable ends, whether it respects government, magistracy, or individuals.” Kent, J., in The People v. Crosswell, 3 Johns. Cas. 337. And this •definition of it is embodied in our own state constitution, which provides, that “ in all criminal prosecutions for libel, the truth may be given in evidence to the jury; and if it shall appear to the jury, dhat the matter charged as libelous, is true, and was published with good motives, and for justifiable ends, the party shall be acquitted. We have no disposition to abridge or restrain the liberty of the press, as thus defined. But, in this case, there is no claim that the •charge against the plaintiff below, was, in fact, true. The defense rests wholly on the claim of privilege. And *if the publisher of a newspaper may, in' virtue of his vocation, without responsibility, publish the details of every criminal charge made before a police officer, however groundless, and whether emanating from the mistake or the malice of a third party, then must private character be, indeed, imperfectly protected. Such publications not only inflict an injury of the same kind with any other species of defamation, but their tendency is also to interfere with the fair and impartial administration of justice, by poisoning the public mind and creating a prejudice against a party, whom the law still presumes to be innocent.
We do not wish to be understood as denying the right to publish, without malice, a fair and full report of judicial proceedings before examining courts, where, as in this country, such proceedings are had publicly, in the presence of the party accused, and with full ■opportunity of defense on his part. This right we neither deny nor assert, for the question is not before us.
It might, perhaps, well be doubted, whether the style and language of the publication, in this ease, are such as would, in any case, entitle it to the privilege of a fair and impartial report. By the heading of the article, public attention is called to the supposed transaction as a case of “ swindlingthe author of the •charge is not named, but receives a general quasi indorsement as “ a lady," and the plaintiff below is incorrectly said to have been •charged by her with 11 petit larceny."
But, waiving this point, we are satisfied that authority and sound policy alike refuse to extend the privilege here claimed, to the publication, in detail, of false and defamatory charges alone, which have been preferred by a proceeding purely ex parte; and *452 that such publication can only be justified by showing the truth of the charge..
N o exception has been taken, either in the assignment of errors- or in the argument of counsel, to any part of the charge of the-court below, except that which relates to the question we have been considering; and in this we think *there was no error,, and that the motion for a new tidal was properly overruled.

Judgment affirmed.

Brinkerhoee, C. J., and Sutliee, Peck, and Gholson, JJ., con. curred.